# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

```
LOUVENIA ANNETTE RAINGE,      *
                              *
     Plaintiff,               *
                              *
     v.                       *      CV 116-016
                              *
FAY SERVICING CENTER, LLC,    *
                              *
     Defendant.               *
```

# O R D E R

Presently before the Court is Defendant's motion to dismiss. (Doc. 21.) Plaintiff, Louvenia Rainge, lives in a personal residence secured by a loan in which GMFS, LLC has a first-priority security interest. Defendant, Fay Servicing Center, LLC, is the servicing agent for GMFS, LLC. Plaintiff believes that Defendant violated the Real Estate Settlement Procedures Act ("RESPA") and her bankruptcy stay. Defendant believes that Plaintiff's complaint is deficient for a variety of reasons. The Court believes this case should proceed further.

## I. Background

Plaintiff's complaint contains two counts. Plaintiff's first count alleges that Defendant violated RESPA by failing to

respond to two Qualified Written Requests ("QWRs") sent on June 5, 2015, and August 13, 2015, respectively. (Doc. 1 ¶ 6.) As evidence of her attempts, Plaintiff attached to her complaint the two QWRs that she sent to Defendant. Plaintiff also asserts that rather than responding to her QWRs, Defendant "began harassing [her] at least three times per month without explanation." (Doc. 1 ¶ 10.) Plaintiff further alleges that she suffered mental anguish as a result of Defendant's actions, and that she "is entitled to actual and statutory damages as a result of Fay's noncompliance with RESPA, as well as penalties, attorney's fees and such other and further relief as this Court deems appropriate." (Id. ¶ 13.)

Plaintiff's second count alleges that Defendant violated the automatic stay triggered by her bankruptcy case under 11 U.S.C. § 362. (Doc. 1 at 4.) Plaintiff claims Defendant violated the stay by "continually harass[ing] her for pre-petition debt." (Id. ¶ 16.) Plaintiff further claims that she suffered "significant emotional harm" as well as "actual damages in the form of out-of-pocket expenses, attorney's fees and emotional distress." (Id. ¶ 19.) She argues that she is "entitled to compensation damages, punitive damages, costs, and attorney's fees pursuant to 11 U.S.C. § 362(k)." (Id. ¶ 20.)

In response to Plaintiff's complaint, Defendant filed a motion to dismiss. (Doc. 21.) In its motion to dismiss, Defendant argues that Plaintiff's complaint fails to adequately

2

plead a violation of either RESPA or 11 U.S.C. § 362. With regard to the RESPA claim, Defendant argues that Plaintiff: (1) failed to specifically allege that her loan met the requirements of a "federally related mortgage loan"; (2) failed to identify Defendant's designated address for QWRs; and (3) failed to plead actual or statutory damages caused by the alleged RESPA violations. (Id. at 5-8.) With regard to the 11 U.S.C § 362 claim, Defendant argues that: (1) Fay Servicing did not violate the automatic stay, and (2) Plaintiff failed to allege sufficient facts to support her alleged emotional harm. (Id. at 8-10.)

Following Defendant's initial brief in support of its motion to dismiss, Plaintiff filed a response brief (doc. 28) and Defendant filed a reply (doc. 30). Plaintiff's response brief contends that she did allege sufficient facts to make a plausible claim on both counts, but it does not respond to every argument in Plaintiff's motion to dismiss. Defendant's reply argues that Plaintiff abandoned any issue to which she failed to respond. Specifically, Defendant argues that because Plaintiff did not assert that she did use a correct address, Plaintiff has abandoned any argument on that issue. (Doc. 30 at 2.)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

3

to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 556 U.S. 544, 570 (2007)). Applying this standard requires a two-part test. See id. at 679. First, the Court asks whether the plaintiff has stated specific facts supporting a claim rather than mere legal conclusions. Id. Second, it asks whether those facts might plausibly give rise to a right to relief. Id. at 680.

The first prong of the inquiry requires that the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While the Court must accept as "true all of the allegations contained in a complaint," it must not "accept as true a legal conclusion couched as a factual allegation." Id. Generalized conclusions and "bare allegations" will not allow the plaintiff to "unlock the doors of discovery." See id. The plaintiff must assert specific facts that "show" the defendant's misconduct. Id. at 679.

Once the Court separates the specific factual allegations from mere legal conclusions, it must accept those facts as true and "determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing

4

court to draw on its judicial experience and common sense." Id. Well-pleaded facts cannot be merely consistent with the alleged misconduct; they must allow the Court to infer that such misconduct was plausible. Id. at 678. Thus, facts which show only the possibility of misconduct are not enough. Id. The complaint must allege facts that push the claim "across the line from conceivable to plausible." Id. at 683.

Finally, while a plaintiff does not have to "allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007)(quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

### III. DISCUSSION

Defendant makes three main arguments asking this Court to dismiss Plaintiff's complaint. First, Defendant argues that Plaintiff failed to plead sufficient facts such that it is plausible Defendant violated RESPA. Second, Defendant contends that Plaintiff has failed to state a claim that Defendant violated the bankruptcy stay. Third, Defendant asserts that Plaintiff has conceded she sent her QWRs to an incorrect

5

address. Within each main argument, Defendant makes several sub-arguments. The Court now addresses each argument and its relevant sub-arguments.

**A. Did Plaintiff Sufficiently Plead a RESPA Violation?**

Plaintiff's first count in her complaint alleges the Defendant violated RESPA. RESPA provides procedural protections to borrowers seeking to assert errors or request information on their mortgage. 12 U.S.C. § 2601. A portion of these procedural protections allow borrowers to send letters called Qualified Written Requests to their loan servicers. 12 U.S.C. § 2605(e)(1)(A)-(B). When a servicer of a federally related mortgage loan receives a QWR, it must either provide a written acknowledgement of receipt to the sender within five days or fulfill the request stated in the QWR within thirty days. 12 U.S.C. § 2605(e)(1)-(2). If the servicer fails to fulfill the request or acknowledge its receipt, the servicer may be liable for "any actual damages to the borrower as a result of the failure" and "any additional damages, as the Court may allow, in the case of a pattern or practice of noncompliance . . . in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(a)-(b).

Plaintiff claims that Defendant violated RESPA by failing to respond to her QWRs. She seeks actual damages on the basis of Defendant's failure to respond, and she seeks additional damages because Defendant's failure to respond to two QWRs

constituted a "pattern or practice of noncompliance." Defendant argues that Plaintiff failed to make sufficient factual allegations that: (1) the loan at issue is a "federally related mortgage loan"; (2) she sent a valid QWR; or (3) she suffered actual or statutory damages

**1. Did Plaintiff Adequately Plead a "Federally Related Mortgage Loan"?**

Defendant's first argument states that Plaintiff did not sufficiently allege that the loan at issue is a federally related mortgage loan as defined by RESPA. RESPA defines a federally related mortgage loan as a loan "secured by a first or subordinate lien on residential real property . . . designed principally for the occupancy of from one to four families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same party" <u>and</u> which meets one of four additional criteria set forth in the statute. 12 U.S.C. § 2602(1). Defendant believes that the Plaintiff must provide evidence of every particular element of this definition to establish a RESPA argument and survive a motion to dismiss. The Court disagrees.

The Defendant's argument requires more of the Plaintiff than is necessary at the motion-to-dismiss stage. A plaintiff does not have to "allege a 'specific fact' to cover every element [of a claim] or allege 'with precision' each element of a claim' . . . ." 500 F.3d at 1282-83. She need only make

7

"direct or inferential allegations of each element of a claim." Id.

Plaintiff's complaint makes adequate allegations that her loan is a federally related mortgage loan. In her complaint, Plaintiff alleged that she was a qualified borrower and Defendant a qualified servicer under RESPA, and she alleged with specificity her attempts to assert her rights under RESPA. She also specifically referenced the fact that the security interest at issue is "her personal residence . . . subject to a first priority security interest in favor of GMFS, LLC" for which Defendant is an agent. Plaintiff does not have to provide documentation proving that the house is her personal residence or that it is subject to a first-priority mortgage interest in favor of GMFS. Plaintiff's assertion that the house is her personal residence and subject to a first-priority security interest is an allegation of fact, and the Court takes such allegations as true at this stage. Because her allegations speak directly to the statutory definition of a federally related mortgage loan, they qualify as direct allegations of this element, and her complaint is not deficient on this issue.

**2. Did Plaintiff Plead Sufficient Facts to Make Plausible Her Claim That She Sent a Valid QWR?**

Defendant's second argument claims that "Plaintiff's RESPA claim is deficient because she has not alleged facts establishing that" she sent a valid QWR. RESPA defines a valid

8

QWR as (1) a written correspondence (2) that allows the servicer to identify the name and account of the borrower, and (3) states the reasons the borrower believes the account to be in error or the specific request of information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B)(i)-(ii). The Code of Federal Regulations, however, allows servicers to add an additional requirement. If the servicer provides written notice to the borrower, the servicer may "establish an address that a borrower <u>must</u> use to request information." 12 C.F.R. § 1024.36(b)(emphasis added). If the borrower fails to send the QWR to the designated address, then the servicer has no duty to respond to it. <u>See</u> <u>Berneike v. CitiMortgage, Inc.</u>, 708 F.3d 1141, 1149 (10th Cir. 2013). Defendant argues that because Plaintiff's complaint "never identifies [Defendant's] designated address for QWRs," and never alleges that Plaintiff sent the two letters to Defendant's designated address, Plaintiff's complaint is deficient.

Defendant places more weight on the motion to dismiss than it was meant to bear. Defendant's argument boils down to the idea that because Plaintiff did not specifically identify a sub-element of her claim and explicitly point it out to the Court, her complaint was deficient. Modern pleadings, however, do not require such specificity. Charles Alan Wright and Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1202 (3d ed. 2016); <u>see</u> <u>Johnson v. City of Shelby, Miss.</u>, 135 S. Ct. 346 (2014) (noting

9

that the Federal Rules of Civil Procedure "are designed to discourage battles over mere form of statement"); Twombly, 550 U.S. at 573-76 (Ginsberg, J., dissenting). Rather, the Federal Rules of Civil Procedure explicitly sought to eliminate such procedural traps. Arthur R. Miller, From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure, 2010 Duke L.J. 1, 3-10 (noting that the Federal Rules of Civil Procedure were designed to "minimize procedural traps" and allow more claims to proceed on the merits). To accomplish this goal, Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). As a result, pleadings are no longer opportunities for defendants to insert a mine field of technicalities between a plaintiff and her day in court. See Johnson, 135 S. Ct. at 347 (citing with approval the idea that "a basic objective of the rules is to avoid civil cases turning on technicalities"); Twombly, 550 U.S. at 575 (Ginsberg, J., dissenting)("Under the relaxed pleading standards of the Federal Rules, the idea was not to keep litigants out of court but rather to keep them in."); see also Iqbal, 556 U.S at 678 ("Rule 8 marks a notable and generous departure from the hyper-technical, code pleading regime of a prior era. . . .").

Plaintiff's complaint adequately alleges that she sent her QWR to a correct address. Plaintiff asserted the dates she sent her QWRS and alleged that Defendant failed to respond.

Plaintiff then attached to her complaint two copies of the alleged QWRs. The alleged QWRs contain a date, her account number, her name, the substance of her request, and the address to which she sent each letter. Plaintiff does not have to specifically identify and label Defendant's designated QWR address. The Court infers from the inclusion in each letter of the address to which she sent it that the address in the letter is the address Plaintiff alleges triggers Defendant's RESPA obligations. Thus, this Court finds that Plaintiff did identify and allege, even if indirectly, that she sent the QWRs to the correct address for purposes of RESPA.

Additionally, Defendant's argument presents an issue of disputed fact inappropriate for determination on a motion to dismiss. Under the motion-to-dismiss standard, the Court may only look at the "four corners of the complaint" and limited documents attached to the complaint. Speaker v. U.S. Dep't. of Health and Human Servs. Ctr. for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). It must then take all allegations of fact and reasonable inferences in the complaint to be true. Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1328 (11th Cir. 2006). It cannot look outside the four corners of the complaint without converting the motion to one of summary judgment or taking judicial notice of facts mentioned in the complaint itself. Speaker, 623 F.3d at 1379.

Whether Defendant properly established a designated address is, at this point in the litigation, still a question of fact. For a servicer to establish a designated address, it must properly notify the borrower. Only after proper notification can it demand that QWRs be sent to its designated address. The four corners of Plaintiff's complaint and the documents attached contain the factual allegation that she sent a QWR to the address required to trigger Defendant's RESPA obligations, and nothing in the complaint or the documents attached allow this Court to determine that she sent the QWR to the wrong address. Thus, determining whether Plaintiff mailed the QWR to the proper address requires further inquiry facilitated by discovery. If Defendant wishes to challenge Plaintiff's assertion, it must do so at a later stage of litigation, using procedural tools other than a motion to dismiss.

### 3. Did Plaintiff Sufficiently Plead Statutory or Actual Damages?

Defendant's final RESPA argument alleges Plaintiff's complaint is deficient because it does not sufficiently plead any statutory or actual damages caused by the RESPA violation. RESPA grants actual damages for failure to respond to a QWR. To obtain statutory damages, however, a Plaintiff must show that the servicer engaged in a "pattern or practice of noncompliance" with RESPA.

Defendant argues that Plaintiff did not allege sufficient facts to make plausible a claim for actual or statutory damages under RESPA. Defendant argues that Plaintiff has not sufficiently pled statutory damages because Plaintiff has not sufficiently pled the prerequisite for such damages – that it engaged in a "pattern or practice of noncompliance." First, Defendant argues that it could not have engaged in a "pattern or practice of noncompliance" because Plaintiff never sent two valid QWRs. Second, Defendant argues that even if one of the alleged QWRs used a valid address, Plaintiff cannot have sent two valid QWRs because she sent each QWR to a different address. Defendant argues that Plaintiff failed to sufficiently plead facts alleging actual damages because it failed to provide factual allegations that its failure to respond caused the damages alleged. The Court rejects Defendant's assertion that Plaintiff insufficiently pleaded a pattern and practice of noncompliance, but it agrees with Defendant that Plaintiff must plead her claim for actual damages with more specificity.

The Court rejects Defendant's argument that Plaintiff has not pleaded sufficient facts to assert a "pattern or practice of noncompliance." Defendant's argument that Plaintiff mailed her QWRs to an incorrect address is an affirmative defense, but an affirmative defense only allows for dismissal if the allegations in the complaint definitively establish that the affirmative defense applies and no grounds for the claim exist. See Jones

v. Bock, 549 U.S. 199, 215 (2007). The fact that the Plaintiff sent her letters to two separate addresses does not, on the face of the complaint, show that she is not entitled to relief. It is possible that Defendant changed the address to which QWRs must be sent in between the time in which Plaintiff sent the June and August letters. It is also possible that Defendant accepted both addresses at the time the letters were sent. Moreover, Defendant has not yet declared what it considers to be its proper mailing address for a QWR. Without further factual development, the two differing addresses, alone, do not show that "the Plaintiff is not entitled to relief." Jones, 549 U.S. at 215. Thus, Plaintiff may proceed with her claim for statutory damages.

The Court agrees with Defendant, however, that Plaintiff has not adequately alleged facts making it plausible that Defendant's failure to respond caused actual damages. Under 12 U.S.C. § 2605, a plaintiff may recover actual damages that are "a result of" a RESPA violation. Thus, the RESPA violation must have caused the damages alleged. Plaintiff's complaint states that because of "Fay's pattern of non-compliance [she] has experienced mental anguish," and that she is "entitled to actual and statutory damages as a result of Fay's noncompliance with RESPA, as well as penalties, attorney's fees and such other and further relief as this Court deems appropriate." (Doc. 1 ¶ 13.) These allegations are not factual allegations. They are a

recitation of elements. Plaintiff must not prove her damages at this stage, but she must provide details specific enough to show that Defendant's violation plausibly caused actual damages. Plaintiff cannot merely assert that she suffered damages. She must show, with a minimum level factual specificity, what her damages are and how they are related to Defendant's violation.

**B. Plaintiff's 11 U.S.C. § 362 Claim**

The Court now addresses Plaintiff's claim that Defendant violated her bankruptcy stay. Defendant argues that Plaintiff failed to sufficiently allege a violation. Defendant puts forward three arguments: (1) Defendant never violated the bankruptcy stay because the bankruptcy stay was not in place at the time Plaintiff alleges the harassment occurred; (2) Plaintiff failed to allege facts specific enough to plausibly claim that Defendant harassed her; and (3) Plaintiff failed to allege sufficient facts to show a plausible claim for emotional harm. The Court disagrees with Defendant's arguments.

Defendant's first argument proceeds as follows. Under 11 U.S.C. § 362(c)(2)(A), a bankruptcy stay continues until the case is closed, dismissed, or discharged. On September 19, 2014, the bankruptcy court issued an order administratively closing the case. In re Rainge, Case No. 09-12990-SDB (Bankr. S.D. Ga.)(ECF No. 2014). Plaintiff's complaint, however, claims that Defendant only began harassing her after she sent the QWRs

15

in June and August of 2015, well after the bankruptcy court's order closed the case. Thus, on the face of the complaint, Defendant could not have violated the stay because it did not begin contacting Plaintiff until almost a year after the bankruptcy court lifted the stay.

The problem with Defendant's argument is that the bankruptcy stay was in place at the time of the alleged harassment. The order that Defendant asserts closed the case did not actually close the case for purposes of 11 U.S.C. § 362. The order specifically states that "[t]his order shall not constitute an order closing this case for purposes of . . . 11 U.S.C. § 362(c)(2)(A) . . . ." In re Rainge, Case No. 09-12990-SDB (Bankr. S.D. Ga.)(ECF No. 2014). Thus, the bankruptcy stay was in place at the time of the alleged harassment, and Plaintiff has not pleaded facts which defeat her complaint.

Defendant's second argument asserts that Plaintiff did not allege sufficient facts to make a plausible harassment claim because she "never identifie[d] a specific date on which any of the allegedly harassing conduct occurred, much less any specific facts about how Fay Servicing violated the stay." (Doc. 21 at 9.) As with the Defendant's first RESPA argument, this argument asks too much of Plaintiff at the motion to dismiss stage. Under 11 U.S.C. § 362(a), during a bankruptcy stay, a creditor may not perform "any act to collect, assess, or recover a claim

against the debtor that arose before the commencement" of the bankruptcy action. Plaintiff alleges that Defendant called her "three times a month" and "continually" harassed her. Plaintiff is not expected to produce a call log of all harassing phone calls or offer to this Court recorded phone calls evidencing the misconduct of Defendant. Plaintiff alleges harassment by Defendant with specificity (that Defendant called her several times a month) and alleges a specific date that the harassment began (after she sent two QWRs). Accordingly, Plaintiff has sufficiently pleaded harassment.

Defendant's final argument contends that Plaintiff failed to allege sufficient facts to show a plausible claim of emotional harm. Defendant points out that Plaintiff's complaint alleges only that she "suffered significant emotional harm" and that "the circumstances surrounding the continuous violations make it obvious that a reasonable person would suffer significant emotional harm." (Doc. 1 ¶ 17-18) While this allegation is very close to a bare bones allegation, and would need more evidence to be proven at trial, the Court finds that it is enough to make a plausible claim for emotional harm. "Judicial experience and common sense," Iqbal, 556 U.S. at 678, dictate that a harassing creditor violating a bankruptcy stay could cause significant emotional harm given Plaintiff's already tenuous circumstances. Taking Plaintiff's allegations as true,

the Court finds that Plaintiff has made a plausible claim for emotional harm.

## C. Abandonment

Defendant argues that Plaintiff has abandoned any defense that she mailed the QWRs to a correct address, because she failed to respond to Defendant's contrary assertions in her response brief. Defendant claims that "[w]hen a party fails to respond to an argument or otherwise address a claim in response to a motion to dismiss, the court deems such an argument or claim abandoned." (Doc. 30 at 2.) In support of this proposition, Defendant cites Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587 (11th Cir. 1995), as well as a host of district court decisions, many of which cite Dunmar. (Doc. 30 at 2.) Dunmar, however, does not stand for the proposition Defendant asserts.

Dunmar stands for the proposition that an issue present in the pleadings but not litigated on summary judgment may not be raised anew on appeal. In Dunmar, the Petitioner attempted to raise on appeal arguments which he had failed to raise on summary judgment, but which he had presented in his pleadings. 43 F.3d at 599. The Eleventh Circuit stated that, in the context of an appeal, "grounds alleged in the complaint but not relied upon in summary judgment are abandoned." Id. The

18

present case, however, is only at the motion-to-dismiss stage. It is not on appeal. Thus, Dunmar is inapplicable.

Beyond the inapplicability of Dunmar, however, subsequent Eleventh Circuit case law indicates that district courts cannot dismiss a claim based on the plaintiff's failure to respond to a defendant's argument. See Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers v. Wolf Crane Serv., Inc., 374 F.3d 1035 (11th Cir. 2004). In Trustees of the Central Pension Fund, the Eleventh Circuit noted that "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but rather, must consider the merits of the motion." 374 F.3d at 1039 (quoting United States v. One Piece of Property 5800 S.W. 4th Ave., Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004)). Although the Eleventh Circuit relied upon the text of Rule 56 to arrive at its conclusion, and did not specifically mention a motion to dismiss, this Court believes that the prohibition extends to motions to dismiss as well.

As discussed above, motions to dismiss were not and are not intended to be the primary platform from which to litigate issues of law and fact. They merely ask whether the plaintiff has alleged sufficient facts to make a plausible claim upon which relief may be granted. It is only logical, then, that if the Court cannot dismiss an unopposed argument at the summary-judgement stage, which occurs after ample discovery and after

the issues in dispute have fully crystalized, it certainly cannot do so at the motion-to-dismiss stage. A failure to respond at such an early stage could result from a conservation of financial resources, a desire not to reveal certain litigation strategies, or a mere oversight. Thus, failure to respond to Defendant's argument at this early stage does not denote an abandonment of the issue in dispute.

## IV. Conclusion

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. (Doc. 21.) The Court **GRANTS** Defendant's motion with respect to Plaintiff's claim for actual damages under RESPA. It **DENIES** Defendant's motion to dismiss with respect to all other claims, including Plaintiff's claim for statutory damages under RESPA. Thus, Plaintiff's claim for actual damages as a result of RESPA violations is **DISMISSED**. All other claims **SHALL PROCEED** to discovery.

**ORDER ENTERED** at Augusta, Georgia, this 17th day of November, 2016.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA